1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GEORGE FREDERICKS,

11           Petitioner,              No. CIV-S-05-0334 MCE KJM P

12       vs.

13   M.  KNOWLES,                     ORDER AND

14           Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16           Petitioner is a state prison inmate proceeding pro se with a petition for a writ of

17   habeas corpus.  Specifically, petitioner alleges that California Penal Code section 3041 creates a

18   liberty interest in parole; that he has been denied parole repeatedly even though there is no

19   evidence he would pose an unreasonable threat to public safety if released; that the Board of

20   Prison Terms (BPT) has failed to set a base term and so his term has become disproprotionate to

21   the "uniform" term specified in the Penal Code; that the Board relies on the same factors for

22   every denial; and there is a de facto "no parole" policy in the state.  Petition, Memorandum of

23   Points and Authorities at 1.

24           Respondent has filed a motion to dismiss, arguing that the California Supreme

25   Court has held that the applicable statutes do not create a liberty interest in parole and, as a result,

26   the petition does not raise a federal question.

1    Petitioner also has filed a request that the court take judicial notice of the fact that

2  he has again been denied parole, since the filing of the instant petition.

3  I.  The Motion To Dismiss

4    A.  Dannenberg and Sass

5    In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 11 (1979), the United

6  States Supreme Court found that an inmate has "no constitutional or inherent right" to parole,

7  even when a state establishes a system of conditional release from confinement.  The Court

8  recognized, however, that the structure of parole statutes might give rise to a liberty interest in

9  parole that would, in turn, mean an inmate was entitled to certain procedural protections.  Id. at

10  14-15.  In Greenholtz, the Court found that the "mandatory language and the structure of the

11  Nebraska statute at issue" created such a liberty interest.  Board of Pardons v. Allen (Allen), 482

12  U.S. 369, 371 (1987).  What the court found significant in the Nebraska statute and later, in

13  Allen, in the Montana parole statutes, was mandatory language: the use of the word "shall" and

14  the presumption that parole would be granted unless certain conditions were shown to exist.

15  Greenholtz, 442 U.S. at 11-12; Allen, 482 U.S. at 377-78.

16    In McQuillion v. Duncan, 306 F.3d 895 (9th Cir.  2002), the Ninth Circuit used

17  the Greenholtz-Allen framework to determine whether California statutes created a liberty

18  interest in parole.  The critical statute at issue in McQuillion is California Penal Code section

19  3041, which provides in relevant part:

20      (a) . . . One year prior to the inmate's minimum eligible parole
       release date a panel . . .  shall again meet with the inmate and shall
21      normally set a parole release date as provided. . . .The release date
       shall be set in a manner that will provide uniform terms for
22      offenses of similar gravity and magnitude in respect to their threat
       to the public,  and that will comply with the sentencing rules that
23      the Judicial Council may issue and any sentencing information
       relevant to the sentencing of parole release dates. . . . .
24
25      (b) The panel . . . shall set a release date unless it determines that
       . . . consideration of the public safety requires a more lengthy
       period of incarceration. . . .
26

2

1    The Ninth Circuit found that subdivision (b) was like the statutes in both <u>Greenholtz</u> and <u>Allen</u>:

2              California's parole scheme gives rise to a cognizable liberty interest
               in release on parole. The scheme "'creates a presumption that
3              parole release will be granted'" unless the statutorily defined
               determinations are made.
4

5    <u>McQuillion</u>, 306 F.3d at 901-02.  Again in <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003),

6    the Court of Appeals reiterated its holding that the California parole scheme created a liberty

7    interest in parole, noting that "California Penal Code § 3041(b) controls" the resolution of the

8    question because its "language clearly parallels the language" under consideration in <u>Greenholtz</u>

9    and <u>Allen</u>.  <u>See also</u> <u>In re Rosenkrantz</u>, 29 Cal.4th 616, 654 (2002), <u>cert. denied</u>, 538 U.S. 980

10   (2003) (discussing § 3041(b), the California Supreme Court noted "parole applicants . . . have an

11   expectation that they will be granted parole unless the Board finds . . . that they are unsuitable in

12   light of the circumstances specified by statute and regulation").

13             Respondent argues that the legal landscape has been changed by the combined

14   impact of three cases decided after <u>Greenholtz</u> and <u>Allen</u>:  <u>In re Dannenberg</u>, 34 Cal.4th 1061

15   (2005), <u>cert. denied</u>, ___ U.S. ___, 126 S. Ct. 92 (2005), <u>Sass v. California Board of Prison</u>

16   <u>Terms</u>, 376 F.Supp.2d 975 (E.D. Cal. 2005),[1] and <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).   In

17   <u>Dannenberg</u>, the California Supreme Court noted:

18             Our conclusion that California's parole statutes allow the Board to
               find unsuitability without engaging in a comparative analysis of
19             other offenses or applying "uniform term" principles, and that the
               Board adhered to state law in Dannenberg's case also disposes of
20             his contention that he was denied federal due process rights arising
               from his protected liberty interest, and expectation, in a "uniform"
21             parole date.

22   <u>Dannenberg</u>, 34 Cal.4th at 1098 n.18.  In <u>Dannenberg</u>, the court resolved the "tension between

23   the commands in subdivisions (a) and (b)" of Penal Code section 3041, and the question whether

24   "the public-safety provision of subdivision (b) takes precedence over the 'uniform terms'

25   _____

26          [1]  <u>Sass</u> has been appealed to the Ninth Circuit Court of Appeal, with oral argument
     scheduled for March 16, 2006.  <u>See</u> Case No. 05-16455 (9th Cir. Aug. 1, 2005).

1   principle of subdivision (a)." Id. at 1081-82.  To answer the question, the court examined related

2   legislation, statutory language, case law and agency interpretations.  It noted that

3           [s]o long as the Board's finding of unsuitability flows from
            pertinent criteria, and is supported by "some evidence" in the
4           record before the Board, the overriding statutory concern for public
            safety in the individual case trumps any expectancy the
5           indeterminate life inmate may have in a term of comparative
            equality with those served by other similar offenders.  Section 3041
6           does not require the Board to schedule an inmate's release when it
            reasonably believes the gravity of the commitment offense
7           indicates a continuing danger to the public, simply to ensure that
            the length of the inmate's confinement will not exceed that of
8           others who committed similar crimes.

9   Id. at 1084 (internal citation omitted).  The court recognized the Board's broad discretion in

10  determining an inmate's suitability for parole, but also recognized that "the current statute

11  requires the Board to act in each case, either by setting a parole release date, or by expressly

12  declining to do so for reasons of public safety." Id. at 1098.  Its ultimate holding is this:

13          We therefore hold that the Board proceeded lawfully when,
            without comparing Dannenberg's crime to other second degree
14          murders, to its base term matrices, or to the minimum statutory
            prison term for that offense, the Board found him unsuitable to
15          receive a fixed and "uniform" release date by pointing to some
            evidence that the particular circumstances of his crime . . .
16          indicated exceptional callousness and cruelty with trivial
            provocation, and thus suggested he remains a danger to public
17          safety.

18  Id. at 1098.  What Dannenberg did, then, was to find that the provisions of section 3041(a),

19  which appear to require the Board to set a minimum, uniform term, did not create a liberty

20  interest in parole, because the parole board was required to undertake the public safety inquiry of

21  subdivision (b) before setting a uniform term.  Because the Ninth Circuit's determination in

22  McQuillion that the statute does create a liberty interest in parole is based on subdivision (b),

23  Dannenberg does not undercut the McQuillion holding.

24          The California Supreme Court in Dannenberg did discuss subdivision (b) at

25  length.  In the course of that discussion, it noted that the word "shall" in both subdivisions is not

26  used in the absolute sense, but rather is limited in subdivision (b) "by 'unless,' followed by the

4

1    rule that the Board should *not* set a release date if 'consideration of the public safety' requires

2    lengthier incarceration for the particular inmate." Id. at 1087 (emphasis in original).

3              In Sass, the second case relied on by respondents, the district court relied on the

4    Dannenberg definition of "shall," the statutory scheme of section 3041, California jurisprudence

5    denying the existence of a right to parole, and the broad discretion given to the parole board to

6    conclude that the California statute does not create a liberty interest in parole. Sass,

7    376 F.Supp.2d at 982-83.

8              As noted above, however, the California Supreme Court's focus in Dannenberg

9    was the minimum and/or uniform term provisions of subdivision (a), not the contours of

10   subdivision (b) as a separate provision.  That court's exegesis of the statutory scheme was

11   designed to resolve the tension between the two subdivisions; in so doing, it rejected the notion

12   that subdivision (a) created any liberty interest in a uniform date or otherwise took precedence

13   over the public safety concerns of subdivision (b).  The court did not hold that subdivision (b)

14   similarly did not give rise to a liberty interest in parole, though it had the opportunity to do so.

15             Moreover, the Dannenberg court did not overrule Rosenkrantz, but instead relied

16   on that case throughout its explication of the state's parole scheme.  See, e.g. Dannenberg, 34

17   Cal.4th at 1082 (relying on Rosenkrantz's description of the parole board's discretion).  Thus,

18   Rosenkrantz's recognition that "[t]he judicial branch is authorized to review the factual basis of a

19   decision of the Board denying parole in order to ensure that the decision comports with the

20   requirements of due process of law" and of inmates' expectation they will be granted parole

21   absent public safety considerations remains intact.  Rosenkrantz, 29 Cal.4th at 618, 654, 658.

22             The limited nature of Dannenberg's reach is illustrated by the decisions of the

23   state Courts of Appeal that have considered parole habeas petitions after Dannenberg's

24   publication.  In In re Fuentes, 135 Cal.App.4th 152, 160-61 (4th Dist. 2005), the court described

25   Dannenberg as clarifying parole standards in its rejection of the notion that the Board must

26   undertake a comparative analysis of similar crimes before denying parole based on public safety

1   concerns.  See also In re Lowe, 130 Cal.App.4th 1405, 1418-19 (6th Dist. 2005) (parole is the

2   rule rather than the exception); In re DeLuna, 126 Cal.App.4th 585, 591 (6th Dist. 2005) (a court

3   must consider whether the Board's procedures satisfy due process); In Re Shaputis, 135

4   Cal.App.4th 217, 227 (4th Dist. 2005) ("We are charged with the obligation to ensure the BPT's

5   decision comports with the requirements of due process of law . . .").

6           Taking into account Dannenberg in its entirety, and its state court progeny, the

7   undersigned is of the opinion that the California Supreme Court described the word "shall" in

8   subdivision (b) as "not used in an absolute sense" only because it was limited by the phrase

9   "unless it [the Board] determines that . . . consideration of the public safety requires a more

10  lengthy period of incarceration."  The court did not say "shall" was no longer a command, only

11  that the command had modifiers.

12          The limitation recognized by the California Supreme Court does not

13  fundamentally alter this court's understanding of California's parole statute at this point in time.[2]

14  The United States Supreme Court found the Nebraska law under consideration in Greenholtz to

15  create a liberty interest in parole even though the law said the parole board "shall order [an

16  inmate's] release unless it is of the opinion that his release should be deferred" for several

17  specified reasons.  Greenholtz, 442 U.S. at 11.  The Montana statute at issue in Allen provided

18  that "the board shall release" inmates "when in its opinion" certain requirements were met.

19  Allen, 482 U.S. at 376-77.  As the Court explained:

20          We reject the argument that a statute that mandates release "unless" certain
            findings are made is different from a statute that mandates release "if,"
21          "when," or "subject to" such findings being made.  Any such statute
            "creates a presumption that parole release will be granted."
22

23  Id. at 378.  Subdivision (b) is the fraternal twin of the statute in Greenholtz; whether or not

24  "shall" is used in an absolute sense, the statute creates a liberty interest in parole.

25

26          [2] See Sass v. California Board of Prison Terms, Case No. 01-CIV-S-0835 MCE KJM
    (E.D. Cal.), Findings and Recommendations filed Mar. 16, 2005 at 4-5.

1    That California's parole board exercises broad discretion in making parole

2    determinations is not inconsistent with the determination that the statute creates a liberty interest

3    in parole.  In Greenholtz, the Supreme Court recognized the similar "broad discretion" vested in

4    the parole board, but found a liberty interest even so.  Greenholtz, 442 U.S. at 13.   Respondent

5    has offered no reason why this aspect of Greenholtz is no longer valid.

6    In the instant case, in addition to relying on section 3041(b)'s conditional liberty

7    interest, petitioner includes a challenge to the parole board's refusal to set a base, uniform term.

8    Here, Dannenberg's interpretation of California law – that such a term need not be set if the

9    Board finds that release would not be in the interests of public safety – does bind this court.

10   Sass, 376 F.Supp.2d at 982.  Only this portion of the petition fails to raise a federal question.

11   B.  Sandin

12   In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court

13   addressed the question of when due process liberty interests are created by internal prison

14   regulations.  The Court concluded it would abandon an examination of "mandatory language"

15   and instead focus its liberty interest inquiry on ensuring "freedom from restraint which ...

16   imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

17   prison life." Id. at 484.  Respondent argues this standard now governs the determination of

18   whether section 3041(b) creates a liberty interest in parole.

19   In McQuillion, 306 F.3d at 903, and again in Biggs, 334 F.3d at 914-15, the Ninth

20   Circuit rejected the application of Sandin to a determination of whether a statute creates a liberty

21   interest in parole.  See also Sass, 376 F.Supp.2d at 980-81.  Respondent cites cases from other

22   circuits that have applied Sandin in cases that do not raise challenges to conditions of

23   confinement.  Respondent points to no Supreme Court or Ninth Circuit authority in support of

24   his position.  Based on the record before it, and its reading of the case law, this court is bound to

25   follow McQuillion and Biggs.

26   /////

7

II.  The Request For Judicial Notice

On January 20, 2006, petitioner filed a request that the court take judicial notice of his November 8, 2005 denial of parole when considering the underlying habeas petition. Petitioner has filed his copy of the transcript of the parole board proceeding.  Respondent has not opposed the request.  The November 2005 denial of parole is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Without making any determination as to the ultimate relevance of such evidence, the court grants petitioner's request.

IT IS HEREBY ORDERED that petitioner's January 20, 2006 request for judicial notice is granted.

IT IS HEREBY RECOMMENDED that respondent's motion to dismiss be granted insofar as petitioner alleges the Board of Parole Terms has failed to set a base term and thus his term has become disproprotionate to the "uniform" term specified in California Penal Code section 3041, but denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

/////
/////
/////
/////
/////
/////
/////
/////

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:  February 22, 2006.

6

7

8                                                                    UNITED STATES MAGISTRATE JUDGE

9

10

11
    2/fred0334.157
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

9